[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10427
Non-Argument Calendar
_____

D.C. Docket No. 6:18-cr-00136-CEM-GJK-1


UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RYAN RUSTY RODRIGUEZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 19, 2019)

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

This is an interlocutory appeal by the government from the district court's order excluding evidence, under Rule 403, Fed. R. Evid., of images and videos of child pornography in a prosecution for possession, receipt, and distribution of child pornography.  After careful review, we conclude that the district court abused its discretion when it imposed a blanket ban on the showing of child pornography to the jury.

## I.

Rodriguez was charged in a five-count superseding indictment with possession (Count Three), receipt (Counts One and Two), and distribution (Counts Four and Five) of several videos containing child pornography.  *See* 18 U.S.C. § 2252A(a)(2) & (a)(5)(B).  Before trial, Rodriguez moved *in limine* to prevent the government from showing the jury any videos or images containing child pornography, arguing that this evidence was unfairly prejudicial.

The government responded that the child pornography was relevant to prove that the materials contained child pornography and that Rodriguez knowingly possessed, received, and distributed child pornography.  Further, the government contended that publishing "a measured portion of defendant's collection" adequately mitigated the danger of unfair prejudice.  It advised that it intended to show to the jury "short clips (approximately 5 to 10 seconds long) of the videos charged in the

Superseding Indictment, as well as four to five images out of the approximately 1000 images found in unallocated space" on Rodriguez's computer.

According to the government's summary of the evidence, undercover federal agents in January and February 2018 used a peer-to-peer file sharing program to download videos of child pornography from a computer using an IP address registered to Rodriguez's residence.  The materials downloaded included five videos in a series known as "Daisy's Destruction," which depicted the sadistic torture and sexual abuse of a two-year-old child, as well as other videos of child pornography. These videos formed the basis of Counts Four and Five, the distribution counts. Federal agents then executed a search warrant at Rodriguez's residence.  A forensic search of the materials seized revealed four videos of child pornography, nearly one thousand images of child pornography in "unallocated" space on Rodriguez's computer (meaning the images had been deleted), instructions on how to find child pornography, and other indications that Rodriguez had downloaded files with "titles clearly indicative of child pornography content."  The four videos recovered during the forensic search formed the basis of Counts One, Two, and Three, the possession and receipt counts.  During an interview, Rodriguez claimed that he sometimes accidentally downloads, and then deletes, child pornography when looking for adult pornography.

3

After hearing from the parties, the district court granted Rodriguez's motion to exclude the evidence.  The court first found that, because Rodriguez had agreed to stipulate that the videos and images were in fact child pornography, the government had met its burden as to that element of the offense and there was "no utility in forcing jurors to view clips of the videos to determine whether the videos contain child pornography."

Next, as to the element of Rodriguez's knowledge, the district court concluded that Rodriguez's agreement to present to the jury "a specific written description of the content of each individual video [and image] was sufficient for the Government to prove the element of knowing possession."  And in light of the specific written descriptions, the court reasoned that "[f]orcing the jury to view the clips of the videos [and images] will serve no purpose other than to inflame the passions of the jurors."  In this regard, the court noted that "the mere written descriptions of the alleged child pornography are disturbing and horrific."  Accordingly, the court excluded the challenged evidence under Federal Rule of Evidence 403.

The government now appeals the exclusion of this evidence.  *See* 18 U.S.C. § 3731 ("An appeal by the United States shall lie to a court of appeals from a decision or order of a district court . . . excluding evidence . . . .").  The case has been stayed pending the resolution of this appeal.

**II.**

4

We review a district court's decision to exclude relevant evidence under Federal Rule of Evidence 403 for an abuse of discretion. *United States v. Knowles*, 889 F.3d 1251, 1255 (11th Cir. 2018). The abuse-of-discretion standard recognizes that the trial judge may reach a range of possible conclusions and, thus, affords the district court considerable leeway in evidentiary rulings. *United States Barton*, 909 F.3d 1323, 1330 (11th Cir. 2018). We will not reverse an evidentiary decision of a district court unless the ruling is manifestly erroneous. *Id.*

Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The term "unfair prejudice" "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Within the context of Rule 403, unfair prejudice typically means an undue tendency to suggest decision on an emotional basis. *Id.*

The exclusion of relevant evidence under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir. 2010) (quotation marks omitted). Therefore, when we examine Rule 403 issues on appeal, we view the evidence in the light most favorable to its admission. *Id.*

5

As a general rule, "the prosecution is entitled to prove its case by evidence of its own choice," and a defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the [g]overnment chooses to present it." *Old Chief*, 519 U.S. at 186–87. "A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Id.* at 188. Evidence of the "concrete and particular" "has force beyond any linear scheme of reasoning," and the full picture of the events has "power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." *Id*. at 187. In this way, "the evidentiary account of what a defendant has thought and done can accomplish what no set of abstract statements ever could, not just to prove a fact but to establish its human significance, and so to implicate the law's moral underpinnings and a juror's obligation to sit in judgment." *Id.* at 187–88. Plus, the general rule reflects "the need for evidence in all its particularity to satisfy the jurors' expectations about what proper proof should be." *Id.* at 188. Otherwise, the government may be penalized for gaps in its evidence. *Id.* at 188–89.

Yet, as Rule 403 recognizes, there are limits to the government's right to introduce relevant evidence of its choice. And when evaluating a piece of evidence under Rule 403 that may raise a danger of unfair prejudice, the court may "compar[e] evidentiary alternatives." *Id.* at 183. In other words, the court "evaluate[s] the

6

degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well." *Id.* at 182. "If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk." *Id.* at 182–83. Thus, in limited circumstances, the government can be required to accept a stipulation by the defendant to a particular fact rather than present proof of the stipulated fact. *See id.* at 191 (holding that the government must accept a defendant's stipulation to the fact of a prior conviction in prosecutions for possession of a firearm after a felony conviction under 18 U.S.C. § 922(g)(1)).

We begin our analysis by setting forth the elements of the charged crimes that the government had to prove. Rodriguez was charged with four violations of 18 U.S.C. § 2252A(a)(2) and one violation of 18 U.S.C. § 2552A(a)(5)(B), which together make it unlawful to "knowingly" possess, receive, or distribute child pornography. To convict a defendant under these provisions, the government must prove that (1) the defendant knowingly possessed, received, or distributed (2) images or media of a minor (3) depicting that minor engaging in "sexually explicit conduct." *See United States v. Grzybowicz*, 747 F.3d 1296, 1305 (11th Cir. 2014). To satisfy the knowledge element, the government must prove that the defendant knew that the

material he possessed, received, or distributed showed minors engaging in sexually explicit conduct.  *See Alfaro-Moncada*, 607 F.3d at 733.

The government contends that the district court abused its discretion by discounting the probative value of the child pornography and overestimating the potential for unfair prejudice.  In the government's view, videos or images of child pornography in a child pornography case are "highly probative of both the fact that particular files contained child pornography and of a defendant's knowing receipt, possession, and distribution of those files."  Written stipulations as to the content of the child pornography are not an adequate substitute, according to the government, because the child pornography carries more probative weight than a mere description.  And in any event, the government maintains, Rodriguez cannot stipulate his way out of the full evidentiary force of the case as the government chooses to present it.  To the extent the child pornography would potentially inflame the jury's emotions to some degree, the government contends that courts routinely conclude that this type of evidence that it intends to offer is not substantially more prejudicial than probative, and that, in any event, any prejudice can be adequately mitigated.

As the government notes, we have upheld the admission of similar evidence of child pornography against Rule 403 challenges.  In *Alfaro-Moncada*, the defendant challenged the admission of five still images of child pornography,

8

arguing that "showing the images to the jury was done only to prejudice and inflame the minds of the jurors" and was improper under Rule 403. 607 F.3d at 734. We held that the images served two "valid purposes." *Id.* First, the images proved that the DVDs from which the images were taken actually contained child pornography, though we noted the defendant's stipulation to that fact. *Id.* Second, the images "tended to show that [the defendant] knew he was in possession of child pornography, a fact that he did not stipulate." *Id.* While we acknowledged that the images may have "created some risk of injecting emotions into the jury's decision-making," we concluded that the court reasonably found that the risk did not substantially outweigh the images' probative value, particularly when the jury was shown only a small fraction of the total number of images on the DVDs. *Id.*

Likewise, in *United States v. Dodds*, we upheld the admission of 66 images of child pornography against a Rule 403 challenge that the evidence was unfairly cumulative and prejudicial. 347 F.3d 893, 897–90 (11th Cir. 2003). We found that the images were "probative for several reasons." *Id.* at 899. They showed that the images the defendant possessed were child pornography, that the defendant "knew the images were child pornography," and that the defendant intended to collect such pornography. *Id.* We also noted that only a small proportion of the images in the defendant's possession were shown to the jury and that the district court questioned jurors about viewing child pornography during voir dire. *Id.* While leaving open

9

the possibility that "in another case such images might be deemed unfairly prejudicial," we held that the court did not abuse its discretion by admitting the images in that case. *Id.*

Consistent with these decisions, our sister circuits have almost uniformly upheld the admission of a sample of images or videos of child pornography, despite a defendant's offer to stipulate that the images or videos contain child pornography. *E.g.*, *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008); *United States v. Polouizzi*, 564 F.3d 142, 152–53 (2d Cir. 2009); *United States v. Finley*, 726 F.3d 483, 492–93 (3d Cir. 2013); *United States v. Caldwell*, 586 F.3d 338, 343 (5th Cir. 2009); *United States v. Sewell*, 457 F.3d 841, 843–44 (8th Cir. 2006); *United States v. Ganoe*, 538 F.3d 1117, 1123–24 (9th Cir. 2008); *United States v. Schene*, 543 F.3d 627, 643 (10th Cir. 2008). These courts have reasoned that a defense stipulation does not overcome the government's right to make a full presentation of the crimes charged, that images or video recordings of child pornography have probative force beyond written stipulations, and that the danger of unfair prejudice can be mitigated by showing a small number of images or short clips of videos that are representative of the materials possessed, received, or distributed.

Here, we conclude that the district court abused its discretion by imposing a blanket ban on showing the jury any child pornography—whether still images or

10

video clips. To begin with, we acknowledge that the videos of child pornography here, particularly the "Daisy's Destruction" series, "include the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime." *United States v. Loughry*, 660 F.3d 965, 972 (7th Cir. 2011) (noting that "hard core" child pornography has "a strong tendency to produce intense disgust"). And we understand the district court's desire to shield the jury from that content, particularly when, as the court recognized, the "mere written descriptions of the alleged child pornography are disturbing and horrific."

But a defendant generally may not "stipulate or admit his way out of the full evidentiary force of the case as the [g]overnment chooses to present it." *Old Chief*, 519 U.S. at 186–87. "That the nature of the crime itself, and therefore the nature of the evidence tending to prove it, is emotionally charged does not mean that the prosecution must be deprived of its most probative evidence." *United States v. Smith*, 459 F.3d 1276, 1296 (11th Cir. 2006). Rule 403 creates "no requirement that the government choose the least prejudicial method of proving its case," *United States v. Dixon*, 698 F.2d 445, 446 (11th Cir. 1983), nor is it meant to "sanitize[]"

11

the facts or "to mitigate a crime," *United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).[1]

The child pornography here was probative because it tended to show both that the materials possessed, received, and distributed by Rodriguez contained pornography and that he knew he had possessed, received, and distributed child pornography.  Although Rodriguez stipulated that the materials contained child pornography, he did not stipulate to his knowledge of the child pornography.  *See United States v. Eads*, 729 F.3d 769, 778 (7th Cir. 2013) ("A stipulation about the content of charged images only goes so far if it is silent with respect to the defendant's knowledge of the images in his possession.").  So the government still bore the burden of proving Rodriguez's knowledge that he received, possessed, and distributed child pornography, and the child pornography itself tends to show that knowledge.  *See Alfaro-Moncada*, 607 F.3d at 734; *Dodds*, 347 F.3d at 899.

Moreover, the videos were not extrinsic to the offenses charged "but rather a part of the actual pornography possessed," received, or distributed.  *Dodds*, 347 F.3d at 898; *cf. United States v. Stout*, 509 F.3d 796, 800 (6th Cir. 2007) (holding that it was an abuse of discretion to admit extrinsic evidence that was "more lurid and frankly more interesting than the evidence surrounding the actual charges").  The

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

12

videos were, therefore, central to the story of Rodriguez's conduct in a way that the name or nature of a prior offense is not in a prosecution for possession of a firearm by a convicted felon under § 922(g)(1). *See Old Chief*, 519 U.S. at 190 (noting that "proof of the defendant's status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense"). The specific nature and content of the videos were relevant not just to prove the discrete elements of the offense but to establish the "human significance" of the facts. *See id.* at 187–88. The child pornography also might be part of the proof a jury might reasonably expect—reluctantly, to be sure—in a case involving possession, receipt, and distribution of child pornography. *See id.* at 188.

While the district court was permitted to compare evidentiary alternatives, including Rodriguez's stipulation to specific written descriptions of the videos and images, written descriptions do not have "substantially the same or greater probative value" as videos and images on which the descriptions are based. *Old Chief*, 519 U.S. at 182–83; *see United States v. Cunningham*, 694 F.3d 372, 389 (3d Cir. 2012) (stating that "the agreed upon stipulation obviously falls far short of the evidentiary impact made by the video excerpts the government wanted to present"). Although this case involves a more extensive stipulation than most, we agree with our sister circuits that images or videos of child pornography have probative force beyond any written stipulation. *See, e.g.*, *Cunningham*, 694 F.3d at 389; *Caldwell*, 586 F.3d at

13

343; *Ganoe*, 538 F.3d at 1123–24.  We therefore respectfully disagree with the district court's statement that "[f]orcing the jury to view the clips of the videos will serve no purpose other than to inflame the passions of the jurors."

Viewing the evidence in the light most favorable to admission, *see Alfaro-Moncada*, 607 F.3d at 734, we conclude that the district court abused its discretion by imposing a blanket ban on the showing of child pornography to the jury.  Given the traditional prerogative of the government to prove its case with evidence of its choice, and the lack of evidence with substantially the same or greater probative value as the child pornography itself, the court cannot wholly prevent the government from showing to the jury evidence of the videos Rodriguez is charged with possessing, receiving, and distributing.  We therefore vacate the district court's decision to exclude all child pornography from the trial.

To be clear, we hold only that the line drawn by the district court in the decision under review—excluding from trial images or videos of child pornography altogether—constituted an abuse of the court's discretion under Rule 403.  We do not otherwise express or imply any opinion about how the district court must exercise that discretion upon remand.

**VACATED AND REMANDED.**

14