United States Court of Appeals
For the Eighth Circuit
No. 12-3397

United States of America,

*Plaintiff - Appellee,*

v.

Timothy C. Stringer,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: September 27, 2013
Filed: January 6, 2014

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Timothy Stringer entered a conditional guilty plea to producing child pornography, in violation of 18 U.S.C. § 2251(a). The district court sentenced Stringer to 360 months' imprisonment. Stringer appeals an order of the district court[1]

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable James C. England, United States Magistrate Judge for the Western District of Missouri.

denying his motion to suppress evidence. He also appeals a pretrial ruling of the district court[2] excluding evidence that one of the minors involved in Stringer's production of child pornography was emancipated at the time the photographs were taken. We affirm.

## I.

On June 14, 2010, Trooper T.W. Hilburn of the Missouri State Highway Patrol was on duty in Cassville, Missouri. Hilburn observed a car leaving a residence known for drug activity. Hilburn stopped the vehicle because it was missing license plates and did not have working taillights.

When Hilburn approached the car, he observed Stringer, then thirty-three years old, in the driver's seat. There were two young, female passengers: G.R., then fifteen, in the front seat and A.K., then seventeen, in the back. Stringer said he had just purchased the car but had not yet licensed it. Hilburn obtained paperwork from Stringer, returned to his patrol car to run a computer check, and walked back to Stringer's vehicle. At that point, he noticed "pretty quickly" that G.R.'s eyes were "very dilated." Hilburn suspected that both female passengers were under the influence of illegal drugs, so he called the chief of police in Cassville and requested that she bring a drug dog to the scene.

Having verified that the vehicle had a valid Arkansas title, Hilburn returned Stringer's paperwork and told him that he was free to leave, but that he could not drive away the vehicle without license plates and functioning taillights. Hilburn requested permission to search Stringer's vehicle; Stringer refused. Stringer then inquired whether he could leave if he fixed the taillights. Hilburn replied that

---

[2]The Honorable Greg Kays, United States District Judge for the Western District of Missouri.

Stringer could attempt to fix the lights but that because the drug dog was *en route*, the vehicle could not leave.

When Stringer got out of the car, Hilburn observed a knife in Stringer's pocket and asked him to remove it for safety reasons. Stringer emptied his pockets, and one object then displayed was a case for contact lenses. Hilburn asked permission to examine the case, and Stringer consented. Upon opening the case, Hilburn noticed a white crystalline substance around the edges of the lid and saw a white "blob" in the center of each compartment. Hilburn suspected the substance was methamphetamine and asked the dispatcher to send an officer with a field test kit.

Ten minutes later, an officer arrived with a drug test kit. The contact lens case tested positive for methamphetamine. Hilburn then placed Stringer under arrest and placed him in his patrol car. The local police chief then arrived with a drug dog. The canine alerted to the driver's seat and the dash panel area.

Hilburn then searched Stringer's vehicle. In the car, Hilburn located an open purse that contained a forged Missouri driver's license in the name of G.R. and a glass pipe that Hilburn thought was consistent with drug use. He also found a Samsung phone inside the purse. Looking for drug information, he searched through the text messages and contacts list. During this review, Hilburn discovered photographs of a male and female engaged in sexual intercourse. G.R. confirmed that the male was Stringer and that she was the female. Hilburn returned to his patrol car and informed Stringer that he was now under arrest for statutory rape.

Hilburn continued the search of Stringer's vehicle. He found a digital camera and searched the images on the camera. Several images depicted G.R. and Stringer engaged in intercourse, and many more showed G.R. nude or in a state of undress. The camera also contained pictures of A.K. undressed and nude.

Hilburn also located a Motorola cell phone, which G.R. identified as Stringer's. Hilburn searched that phone and discovered images similar to those found on G.R.'s phone, including images of Stringer and G.R. engaged in sexual intercourse. During subsequent interviews, G.R. confirmed that she had engaged in sexual intercourse with Stringer, and that Stringer used a cell phone and camera to take photographs of her engaged in sexually explicit conduct.

A grand jury charged Stringer with committing five criminal offenses. Count One, to which Stringer eventually pleaded guilty, alleged production of child pornography, in violation of 18 U.S.C. § 2251(a). The charge alleged that he used a minor, G.R., to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, using (1) a Samsung cell phone (G.R.'s phone), (2) a Motorola cell phone (Stringer's phone), and (3) an Olympus camera (the camera found in the car).

Stringer moved to suppress all of the evidence seized as a result of the traffic stop. After an evidentiary hearing, a magistrate judge recommended denial of the motion, and the district court adopted the recommendation. The court concluded that Hilburn did not unreasonably prolong the investigative stop, because Hilburn had reasonable suspicion to believe that Stringer was involved in illegal drug activity. The court further concluded that there was probable cause to justify the search of the vehicle, cell phones, and camera, and that a warrant was not required. Prior to trial, the district court also ruled that Stringer could not present evidence of G.R.'s previous marriage at age fourteen and her "emancipation," because emancipation of the minor is not a legal defense to a charge of producing child pornography and the proffered evidence was likely to confuse the jury.

Stringer then entered a conditional guilty plea to production of child pornography as charged in Count One of the indictment, reserving the right to appeal the denial of his motion to suppress and the district court's ruling excluding evidence

-4-

of G.R.'s emancipation. The plea agreement provides that if Stringer "prevails on this appeal, and the evidence is suppressed, he will be allowed to withdraw his guilty plea."

## II.

### A.

On the motion to suppress, Stringer concedes that the trooper had probable cause to stop his vehicle for traffic violations. Stringer argues, however, that Hilburn violated the Fourth Amendment's proscription against unreasonable searches and seizures by continuing to detain Stringer after Hilburn confirmed that Stringer had a valid driver's license and that the car was validly registered in Arkansas. A traffic stop can become unlawful "if it is prolonged beyond the time reasonably required" to complete the mission of the initial seizure. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Continued detention is constitutional, however, if an officer has reasonable suspicion that other criminal activity is afoot. *United States v. Gallardo*, 495 F.3d 982, 987 (8th Cir. 2007). We consider the totality of the circumstances to determine, "based on commonsense judgments and inferences about human behavior," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000), whether the trooper had "at least a minimal level of objective justification" for prolonging the seizure. *Id.* at 123–24.

The mission of the initial seizure was fulfilled when Hilburn returned to Stringer's car with Stringer's paperwork. Hilburn told Stringer that he personally was free to leave, but Stringer contends that the continued detention of his vehicle constituted a continued seizure of his person as well. Assuming for the sake of analysis that Stringer was seized after the completion of the routine traffic stop, we agree with the district court that Hilburn had reasonable suspicion that Stringer was involved in narcotics offenses.

Hilburn had observed Stringer's vehicle leaving a house known for drug transactions. He testified that the residence had been searched several times by the local drug task force, and that he personally had stopped several people leaving the house in possession of methamphetamine and other illegal substances. During the traffic stop, Hilburn also saw that G.R. had "very dilated" pupils. Based on his training as a certified drug recognition expert, Hilburn concluded that the juveniles appeared possibly to be under the influence of narcotics. When Stringer emptied his pockets after exiting his vehicle to repair the taillights, Hilburn observed the contact lens case containing the crystalline substance and the gelatinous blob that he suspected was methamphetamine. This information provided objective indicia of possible criminal activity that justified further investigation. *See generally United States v. Shafer*, 608 F.3d 1056, 1063 (8th Cir. 2010); *United States v. Long*, 320 F.3d 795, 800 (8th Cir. 2003).

For these reasons, the duration of the seizure was constitutionally reasonable, and the district court correctly refused to suppress evidence based on the length of the encounter. The officers had sufficient grounds to detain Stringer until the point at which they developed probable cause for an arrest.

B.

Based on the positive field test of the contact lens case for methamphetamine and the drug dog's alert to Stringer's car, the officers had probable cause to search the car. *See United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir. 1994) (en banc). They were permitted to search the vehicle and any closed containers therein without a warrant, based on the automobile exception to the Fourth Amendment's warrant requirement. *United States v. Ross*, 456 U.S. 798, 820–21 (1982). Stringer contends, however, that the officers impermissibly searched the contents of the cell phones and digital camera without a warrant. In his view, modern cell phones and digital cameras

-6-

are more like computers than traditional containers, and officers must obtain a warrant to search the electronic contents of these devices.

Stringer's argument fails before we reach the merits. He lacks standing to challenge the search of the Samsung cell phone belonging to G.R., and the evidence seized from the Samsung phone is sufficient to sustain Stringer's conviction. The Fourth Amendment protects the people against unreasonable searches of "their" effects, and an accused in a criminal case may not assert the Fourth Amendment rights of a third party. *Rawlings v. Kentucky*, 448 U.S. 98, 104–06 (1980); *Rakas v. Illinois*, 439 U.S. 128, 133–38 (1978). To mount a successful motion to suppress, an accused must first establish that he personally has a legitimate expectation of privacy in the object that was searched. Stringer makes no argument that he has a reasonable expectation of privacy in the contents of G.R.'s cell phone, so he may not challenge the seizure of evidence from that device.

The charge to which Stringer pleaded guilty alleged that he produced child pornography using three different devices: (1) the Samsung cell phone (G.R.'s phone), (2) the Motorola cell phone (Stringer's phone), and (3) the Olympus camera. His motion to suppress sought to exclude all evidence obtained from the three devices. According to his plea agreement, Stringer is permitted to withdraw his guilty plea only if he "prevails on this appeal, and the evidence is suppressed." Because Stringer cannot challenge the search of the Samsung cell phone and the seizure of evidence from that device, he cannot achieve exclusion of the evidence described in his motion to suppress. It is therefore unnecessary to address whether the warrantless searches of Stringer's cell phone and the digital camera were constitutional. The evidence obtained from G.R.'s cell phone is sufficient to sustain the conviction.

Stringer also challenges the district court's exclusion of evidence that G.R. was an emancipated person at the time the offenses were committed. The statute under which Stringer was convicted, 18 U.S.C. § 2251(a), prohibits using "any minor" with the intent that "such minor" engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct. Stringer argues that because G.R. was legally emancipated from her parents prior to engaging in the conduct at issue in the indictment, she was not a "minor" in the eyes of the law, and it was legally impossible for Stringer to violate § 2251(a) through his interactions with her.

We agree with the district court that G.R.'s previous marriage and emancipation are not legal defenses to a charge against Stringer under § 2251(a). The term "minor" is defined by 18 U.S.C. § 2256(1) as "any person under the age of eighteen years." Section 2256(1) provides no exception for emancipated persons. G.R. was a "minor" within the meaning of the statute, regardless of her emancipated status, and the district court acted within its discretion in concluding that evidence of emancipation would "confuse the jury and lend itself to perhaps a jury nullification issue." R. Doc. 113, at 19. There was no reversible error in the pretrial evidentiary ruling. *See* Fed. R. Evid. 401, 403.

\* \* \*

The judgment of the district court is affirmed.

_____